IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| ALEX ABOU-HUSSEIN, | ) | Civil Action No. 2:09-1988-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| RAY MABUS, SECRETARY | ) | |
| OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff, pro se, under the Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiff alleges that he is a federal government civil service employee employed by the Space & Naval Warfare Command (SPAWAR) at its Atlantic Command located in Charleston County, South Carolina. The named Defendant is the Secretary of the Navy.

The Defendant filed a motion to dismiss and/or for summary judgment on December 28, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on January 6, 2010, advising Plaintiff of the importance of a motion for summary judgment, and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendant's motion may be granted, thereby ending his case.

After receiving an extension of time, the Plaintiff filed a cross motion for summary judgment on February 9, 2010, as well as a supplement to his cross motion on February 11, 2010. The



1

Defendant thereafter filed a response in opposition to Plaintiff's motion on February 26, 2010, as well as a supplement to Defendant's motion to dismiss or for summary judgment on March 18, 2010. Plaintiff filed reply memoranda on March 8, 2010 and March 22, 2010, respectively.

These motions are now before the Court for disposition.[1]

### **Background and Evidence**

Although Plaintiff in his verified Complaint[2] is only seeking information concerning five (5) government contracts through the FOIA, he includes numerous allegations in his sometimes rambling complaint about how he is being treated by the Department of the Navy and about suspicions he has concerning various projects. Plaintiff alleges that Science Applications International Corporation (SAIC) holds contract N65236-07-D-6868 (hereafter 6868) with SPAWAR, and that SENTEK (a privately held consulting firm from San Diego, California) performed subcontract services for SAIC under Contract 6868. Plaintiff alleges that the 6868 contract is a cost-plus-fixed-fee agreement (CPFF), encompassing mainly labor services which are charged by the hour. Plaintiff alleges that, under this contract, SPAWAR awarded more than four hundred (400) no bid delivery orders to SAIC without oversight from any agency, with SPAWAR instructing that delivery orders under the contract be less than five hundred thousand dollars each, the "threshold for further scrutiny".

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff's complaint is verified. Therefore, the undersigned has considered the factual allegations set forth in the verified complaint as evidence for purposes of the summary judgment motions.



Plaintiff further alleges that in 2007 he "discovered" that delivery orders under Contract 6868 "may not be bona fide work", and that he requested that the payments for delivery order No. 48, which was under his oversight, be stopped. Plaintiff alleges that because he took this action, he "became targeted by a crooked enterprise that attempted to run him out using slander targeting his allegiance to the United States". Plaintiff alleges that he has been falsely accused of being a "sleeper spy", that his reputation and career have been ruined, and that he later faced threats on his life when he made the FOIA request to expose this "fraud".

Plaintiff alleges that, notwithstanding the "false allegations" that had been made against him, in April 2008 SPAWAR upgraded his position from "secret clearance" to a "top secret/sensitive compartmented information (TS/SCI) billet". Nevertheless, the Naval Criminal Investigative Services (NCIS) refuses to expunge his records of these "false espionage accusations. Plaintiff alleges that he has a separate civil action "ongoing" attempting to have his record expunged.

Plaintiff alleges that in May 2008, he reported the fraud in Contract 6868 to the Office of Special Counsel (OSC), but that the OSC closed the case in September 2008 when Plaintiff could not provide documentation of the contractor's labor rates. Plaintiff alleges that he then sent an email in November 2008 to the SPAWAR Commanding Officer, Admiral Michael Bachmann, "reporting the fraud and asking for protection from threats on his person", following which Bachmann copied Plaintiff on an email reply to the SPAWAR Inspector General (IG). Plaintiff alleges that he then made his FOIA request to SPAWAR for a copy of Contract 6868. Plaintiff further alleges that in December 2008, the SPAWAR IG acknowledged that an investigation was ongoing into Plaintiff's fraud allegations (Case No. 200802022).

Plaintiff alleges that the SPAWAR IG assured him that Contract 6868 would be



released in full, but that when he received a copy of Contract 6868 it was "missing all the Dollar values for labor rates, all contract modifications, and all attachments including the Sub-Contracting Plan that lists the criteria for approved Subcontractors". Plaintiff alleges that he then asked the SPAWAR FOIA coordinator to release the full 6868 contract, who referred Plaintiff's FOIA request to SPAWAR headquarters in San Diego. Plaintiff alleges that he also made four (4) more FOIA requests for other contracts awarded by SPAWAR to SENTEK, SGIS (a defense contractor for SPAWAR), and Eagan McAllister Associates (EMA)[a subsidiary of SAIC], but that all he received was paper copies of meaningless redacted documents "to run up the page count needlessly". Plaintiff alleges that in February 2009, SPAWAR Executive Director Rod Smith denied the release of Contract 6868 labor rates or modifications, citing "trade secrets" and "terrorist activity". Plaintiff alleges that his next three (3) FOIA requests were also denied on the same basis, while his fifth FOIA request was not processed because of a "contrived fee issue".

Plaintiff alleges that he contacted the civilian OGC (Office of General Counsel) at the Navy, who accepted Plaintiff's FOIA appeal on March 4, 2009. Plaintiff alleges that the Appeal Officer, April Christensen, has not proceeded with his appeal, and that on July 6, 2009 he requested a letter stating his right to file in Court. Plaintiff alleges that on July 7, 2009, he was advised that the OGC would not act on his FOIA appeals. Plaintiff alleges that he has asked the OGC for reconsideration, or in the alternative for a proper denial letter for each of his five (5) FOIA appeals, but that he has received unsatisfactory replies.

Plaintiff asks that this Court order that copies of all five (5) contracts and delivery orders for each of his FOIA requests be turned over to him in their entirety with full and complete financial information together with all records and correspondence. Plaintiff also seeks an award of



fees and costs, as well as an assessment of financial penalties against the Defendant.  <u>See generally</u>,

<u>Verified Complaint</u>.

 In support of summary judgment in the case, the Defendant has submitted an affidavit

from James Rosenbaum, who attests that he is the FOIA Coordinator for SPAWARSYSCEN Atlantic,

and that he has handled most of the Plaintiff's FOIA requests directed to the Space and Naval Warfare

Systems Command (SPAWARSYSCOM).  Rosenbaum attests that on November 24, 2008, Plaintiff

sent an FOIA request to SPAWARSYSCOM for documents related to SENTEK Contract N00178-05-

D-4556 (hereafter 4556).  <u>See also</u> Attachment 1, Tab 1.  Rosenbaum attests that in response to this

request, SPAWARSYSCOM provided four hundred twenty (420) pages of responsive documents,

only nineteen (19) of which contained some type of redaction.  <u>See also</u> Attachment 1, Tab 2.

Rosenbaum attests that the basis for these redactions is explained in the Vaughn Index,[3] and was

supported by the Department of Navy's Office of General Counsel.  <u>See also</u> Attachment 1, Tabs 3-4.

Rosenbaum further attests that SENTEK stated no exceptions to the releasability of company

information in task orders NSO1 and NSO2.  <u>See also</u> Attachment 1, Tab 5.

 Rosenbaum attests that on December 11, 2008, Plaintiff sent an FOIA request for

documents related to Contract 6868.  <u>See also</u> Attachment 2, Tab 1.  Rosenbaum attests that when a

request had been made with respect to this contract in 2006, SAIC requested that certain information

be withheld from the requestor, and that after reviewing SAIC's request he had provided two hundred

---

[3] <u>See</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  "A
Vaughn Index must: (1) identify each document withheld; (2) state the statutory exemption claimed;
and (3) explain how disclosure would damage the interests protected by the claimed exemption;"
<u>Citizens Comm'n on Human Rights v. FDA</u>, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995); thereby "
'permit[ing] the court system [to] effectively and efficiently [ ] evaluate the factual nature of disputed
information.' " <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 149 n.2 (1989) (quoting <u>Vaughn</u>,
484 F.2d at 826).



eight (208) pages of responsive documents to that requestor, sixty-five (65) pages of which contained some type of redaction. See also Attachment 2, Tabs 2-3. Rosenbaum attests that he informed SAIC of Plaintiff's new request on June 4, 2009, and asked them to provide a new response, following which SAIC responded on June 26, 2009 with detailed information concerning the potential harm if certain information was released, the basis for which was explained in the Vaughn Index. See also Attachment 2, Tabs 4-5. Rosenbaum attests that the Department of the Navy's Office of General Counsel again supported these redactions. See also Attachment 2, Tab 6.

Rosenbaum attests that on January 25, 2009, Plaintiff sent an FOIA request for documents related to Contract N65236-07-D-6879 (hereafter 6879). See also Attachment 3, Tab 1. Comments were provided by the awardee, following which Rosenbaum provided one hundred forty-seven (147) pages of responsive documents, forty (40) pages of which contained some type of redaction. See also Attachment 3, Tabs 2-3. The basis for these redactions is explained in the Vaughn Index, and was supported by the Office of General Counsel. See also Attachment 3, Tabs 4-5.

Rosenbaum attests that on January 28, 2009, Plaintiff sent an FOIA request for documents related to Contract N65236-08-D-2825 (hereafter 2825). See also Attachment 4, Tab 1. Comments were again provided by the awardee, following which Rosenbaum provided two hundred twenty-four (224) pages of responsive documents, of which forty-one (41) pages contained some type of redaction. See also Attachment 4, Tabs 2-3. The basis for these redactions is explained in the Vaughn Index, and were again supported by the Office of General Counsel. See also Attachment 4, Tabs 4-5.

On March 30, 2009, Plaintiff sent an FOIA request for documents related to Contract N65236-07-6881 (hereafter 6881). See also Attachment 5, Tab 1. Rosenbaum attests that on April



27, 2009, the SPAWARSYSCOM FOIA coordinator requested payment in advance for this material since Plaintiff had not paid his outstanding balance due for his request of December 11, 2008 (Contract 6868). <u>See also</u> Attachment 5, Tab 2. Plaintiff appealed this decision directly to the Office of General Counsel, which supported the FOIA coordinator's position in a denial letter of July 7, 2009. <u>See also</u> Attachment 5, Tabs 3-4. Therefore, this FOIA request was not processed.

Rosenbaum also attests that, pursuant to the Office of the Secretary of Defense Memorandum for DOD FOIA Offices dated November 9, 2001, personal identifying information (to include email addresses) may be found to be exempt under 5 U.S.C. § 552(b)(6) because of the heightened interest in the personal privacy of DOD personnel. <u>See also</u> Attachment 6 [Memorandum]. Rosenbaum attests that, even though there is guidance regarding the protection of DOD personnel, many SPAWARSYSCEN Atlantic personnel are already identified through public websites, so before applying exemption (b)(6) he tries to verify that SPAWARSYSCEN Atlantic personnel are not identified on one of these public websites, and if they are, he generally releases those names.

Finally, Rosenbaum attests that Contract 6868 was the only contract with a subcontracting plan. Contracts 4556, 6879 and 2825 were not required to submit a subcontracting plan, while Contract 6881 was not addressed due to the fee payment issue. <u>See generally</u> Rosenbaum Affidavit, with attached exhibits.

The Defendant has also submitted an affidavit from Richard Walls, who attests that he is employed by SPAWAR as an associate counsel. Walls attests that, in addition to his other duties, he is currently acting as the SPAWAR Headquarters FOIA Coordinator, and has so acted since August 2009. Walls attests that he is responsible for responding to requests for information submitted to SPAWAR pursuant to 5 U.S.C. § 552, and that the Defendant maintains an electronic database of



FOIA requests, records, and responses to such requests, as well as individual files concerning each FOIA request and the action taken in response to that request.

Walls attests that one of the items of information recorded in the FOIA database is the fee assessed in connection with processing the request for documents under FOIA and whether payment of the fee assessed is made. Walls attests that at the time responsive documents are provided to the requestor, the requestor is notified of the fee assessed in processing the request, and that payment must be made to the U. S. Treasury within thirty (30) days. Receipt of the fee payment is then entered into the electronic FOIA database, and a notebook is maintained in the SPAWAR FOIA office that contains a copy of each payment check along with a signed receipt.

Walls attests that a search of the SPAWAR Headquarters FOIA electronic database reveals that Plaintiff was assessed a processing fee of $48.15 for FOIA Request No. 290026 (Contract 6868), and that that payment was never received. Walls further attests that a search of the notebook containing copies of fee payment checks contains no record of a payment being received from the Plaintiff in conjunction with this FOIA request, and that the file maintained in connection with this request contains a copy of an April 8, 2009 letter to the Plaintiff reminding him of his obligation to pay the process fee. See generally, Walls Affidavit.

The Defendant has also submitted an affidavit from Kathryn Breitkreutz, a contracting officer for SPAWARSYSCEN Atlantic. Breitkreutz attests that, as a contracting officer, she has had an unlimited contracting officer warrant since June 2005, and that prior to that time her warrant threshold was fifty million dollars. She is currently a contract division head (supervisor) for Contract Team 2.2.53.

Breitkreutz attests that a solicitation or a request for proposal is issued when the



Government is seeking information from offerers in order to award a contract over one hundred thousand dollars. The solicitation contains a Section L and a Section M which state the evaluation criteria, what offerers have to provide in their response to the solicitation, how submissions are to be organized and the method for selecting the winning offerer, and who will be awarded a contract. Among the items requested to be submitted are past performance information for each offerer. However, while all of the information in the proposal is considered in making a contract award determination, Sections L and M, as well as the contractor's past performance data, are not included in the awarded contract. Therefore, if a request for a copy of a contract is made, that contract will not have a Section L or M, which are contained only in the solicitation. Past performance information is also not included in the contract, as that is only contained in the offerer's proposal, which is not incorporated into the awarded contract.

Breitkreutz attests that in most large, over one hundred thousand dollar contract awards, both past performance data and corporate experience are considered, and are usually significant factors in the award determination. Breitkreutz attests that poor past experience ratings or weak corporate experience can greatly impact an offerer's ability to be competitive for an award when compared to other offerers who have higher ratings in those areas. See generally, Breitkreutz Affidavit.

As attachments to his cross motion for summary judgment, Plaintiff has attached a copy of a chronological record of medical care, which contains a summary conclusion that Plaintiff does not meet the criteria for a diagnosis of a personality disorder, although he does have obsessive-compulsive personality traits. See Plaintiff's Exhibit 1. Plaintiff has also submitted copies of two letters he has received from the Department of the Navy concerning FOIA requests made by the



Plaintiff, both of which state that estimated cost and fixed fee pricing information may properly be withheld from release under FOIA under the Trade Secrets Acts and further advising that the names of DOD employees contained in the requested materials may properly be withheld under Exemption 6 of the FOIA. The second letter also references the $48.15 charge for processing Plaintiff's FOIA request, and asks that Plaintiff forward a check or money order within thirty (30) days. Both letters also advise Plaintiff of his appeal rights. See Plaintiff's Exhibit 2. Plaintiff has also included a copy of a page from the publication "Stars and Stripes" dated February 4, 2010 (Plaintiff's Exhibit 3), copies of several government contract documents (Plaintiff's Exhibits 4-6), a copy of a Memorandum from the Plaintiff to James Rosenbaum and Susan James including two "presidential memoranda" concerning the FOIA (Plaintiff's Exhibit 7), and a letter to the Plaintiff dated July 11, 2008 from Rosenbaum concerning the costs for obtaining FOIA material Plaintiff had requested (Plaintiff's Exhibit 8). As attachments to his supplemental filing of February 11, 2010, Plaintiff has submitted copies of emails he sent regarding his complaints of being investigated, and a copy of a subcontracting report dated October 17, 2007.

   As attachments to the Defendant's response to Plaintiff's motion for summary judgment, the Defendant has submitted another affidavit from Breitkreutz, who attests that she was the contracting officer for solicitation N65236-05-R-0586, which resulted in Contract 6868, which was awarded to SAIC. Breitkreutz attests that that solicitation was conducted as a negotiated procurement and falls under the requirements of Federal Acquisition Regulations (FAR) Part 15 (Negotiated Procurements). Breitkreutz attests that the provisions of FAR Part 14, which deal with sealed bidding, were not applicable to this solicitation and contract award.



Breitkreutz also attests that this procurement was a negotiated procurement (RFP),[4] and that RFP's are the method used for negotiated procurements in keeping with the requirements of FAR 15.203. Breitkreutz has attached a copy of the solicitation and the FAR requirements to her affidavit as attachments 1 and 2. Breitkreutz attests that FAR 15.204-1, which applies to negotiated procurements, clearly states that when awarding the contract, Section IV of the solicitation is not included in the contract. Section IV of the solicitation includes Sections L and M, and as a result they are not a part of the contract. See also, Attachment 2.

Breitkreutz further attests that past performance information is obtained by querying the government past performance databases, and that if no data on a past performance on the contract cited in the offerer's proposal is contained in these databases, the contractor must provide a blank past performance questionnaire from the solicitation to the government agency or to the other entity for which they performed the cited contract work. That entity then fills in the past performance information and sends the completed questionnaire directly to the contracting officer handling the solicitation. However, although the past performance information provided by agencies and other entities is considered a part of the proposal and is considered in making the contract award decision, this information is not made a part of the contract. Breitkreutz attests that this is in keeping with the requirements of FAR 15.204-1 and FAR 4.803, the latter of which discusses what must be retained in the contracting file. See also, Attachment 3.

Breitkreutz attests that, as a contracting officer, she has access to other contract files at SPAWAR Headquarters, and that she has reviewed the solicitation for the other two contract and task orders that are the subject of Plaintiff's FOIA appeal. Breitkreutz attests that solicitation N65236-

---

[4]Request For Proposals.



11

R-07-0156, which resulted in the award of Contract 6879 to Skillstorm, was a negotiated procurement, as reflected in Block Four of the first page of the solicitation. See also, Attachment 4. Breitkreutz attests solicitation N65236-06-R-0763, which resulted in the award of Contract 2825 to Skillstorm, was a negotiated procurement as reflected in Block Four of the first page of that solicitation. See also, Attachment 5. Breitkreutz attests that the task orders (NS01) and (NS02) to SENTEK Consulting were awarded under Contract 4556, which was also a negotiated procurement. Breitkreutz attests that the solicitations for these two orders were issued under the Seaport E (Navy's Seaport Enhanced) contract, and that under that contract well over one thousand contractors are contract awardees, with a subset of awardees covering various small business preference programs. Breitkreutz attests that Seaport E orders are competitive actions, as non-competitive orders are not authorized. These awards also contain restrictions with respect to zones of performance and small business preference programs. Breitkreutz attests that the format for soliciting offerors on competitive orders under Seaport E is to release a solicitation identifying the government's requirements, with these solicitations containing a requirement to provide a proposal under Section L of the solicitation, while Section M covers how the offers will be evaluated. Breitkreutz attests that, just like a contract, when the task order under the Seaport E solicitation are awarded, they do not incorporate the proposal received. See generally, Breitkreutz Affidavit, with attached Exhibits.

      As attachments to his reply memorandum to Defendant's response, Plaintiff has provided copies of emails from him concerning his appeals, as well as a psychological assessment of the Plaintiff dated September 2009, which concludes that Plaintiff does not have any sort of mental condition or illness which may cause a material defect in his ability and willingness to properly safeguard classified information or perform sensitive duties. See Plaintiff's Exhibits 1 and 3. Plaintiff



has also provided an affidavit from Ronny Hill, who attests that he is a Deputy Comptroller employed by SPAWARSYSCEN Atlantic. Hill attests that part of the function of his office is to prepare Navy working capital fund rates to be charged to customers for civil service and military personnel time spent on their work, and that the rates as set forth in the seven thousand six hundred notices to be charged to customers only apply to hours of work performed by the Command's Civil Service and Military personnel. Hill further attests that charges for contractor services, including labor, are based on valid invoices received in accordance with government contracts. Hill attests that SPAWARSYSCEN Notice 7600 of April 6, 2007 represents the civil service employee and military personnel rate charge by SPAWARSYSCEN Charleston for the period October 1, 2006 through October 30, 2007, with few exceptions, while contractor charges would fall under the last sentence of ¶ 3 of the policy, which notes all other costs incurred in performance of customer work will be billed at actual cost. See <u>Hill Affidavit</u>.

In yet another reply memorandum (Court Document No. 38), Plaintiff has resubmitted the copy of the subcontracting report for individual contracts dated October 17, 2007.

### Discussion

As previously noted, although Plaintiff makes various allegations in his <u>pro se</u> complaint about how he is being treated and about various Navy contracts (primarily Contract 6868), Plaintiff is only asserting a claim for copies of materials and documents under the FOIA. Specifically, Plaintiff seeks copies of all five contracts and delivery orders requested in his FOIA requests in their entirety, with full and complete financial information, including all attachments, plans, past performance history, evaluation factors, "IGCEs", "PECPs", and detailed modifications relevant to Plaintiff's clarifications made through correspondence with SPAWAR FIOA coordinators in



Charleston and San Diego and his further correspondence with OGC.

Both parties argue that they are entitled to a grant of summary judgment in this case. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Issue of Exhaustion of Administrative of Administrative Remedies)

Defendant initially argues that most if not all of Plaintiff's requested relief should be dismissed for failure of the Plaintiff to exhaust his administrative remedies before filing this action. Exhaustion of administrative remedies is required before pursuing an FOIA claim in federal court. See Oglesby v. United States Department of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990)[Claimant must exhaust all administrative remedies before seeking judicial review of an FOIA request]; Hidalgo v. Federal Bureau of Investigation, 344 F.3d 1256, 1259 (D.C. Cir. 2003).

First, the Defendant argues that Plaintiff failed to exhaust his administrative remedies



with respect to his requests of December 11, 2008 and March, 30 2009 by failing to pay his assessed copying fees for these two requests.  <u>Trueblood v. United States Department of the Treasury</u>, 943 F.Supp. 64, 68 (D.D.C. 1996); <u>Center to Prevent Handgun Violence v. Department of the Treasury</u>, 981 F.Supp. 20, 23 (D.D.C. 1997)[Requestor failed to exhaust administrative remedies by not paying assessed fee], appeal dismissed, No. 97-5357 (D.C. Cir. Feb. 26, 1997); <u>Pollack v. Department of Justice</u>, 49 F.3d 115, 119-120 (4th Cir. 1995)[Commencement of an FOIA action does not relieve requestor of obligation to fees].  The record reflects that Plaintiff failed to pay a balance owed on his second FOIA request (December 11, 2008 - relating to Contract 6868), and that his fifth FOIA request (March 30 2009 - relating to Contract 6881) was not processed because he failed to pay his assessed fee in that case.  <u>Rosenbaum Affidavit</u>, Attachment 5, Tab 2; <u>see also</u> <u>Walls Affidavit</u>.  However, notwithstanding the evidence submitted by the Defendant on this issue, Plaintiff does not address the Defendant's arguments with respect to exhaustion of administrative remedies in any detail.

After careful review of the evidence and arguments submitted, the undersigned agrees with the Defendant that Plaintiff's claim with respect to his FOIA request of March 30, 2009 (Contract 6881) is subject to dismissal for failure of the Plaintiff to exhaust his administrative remedies by paying the applicable processing fee.  <u>Trueblood</u>, 943 F.Supp. at 67; <u>Pollack</u>, 49 F.3d at 119-120. Additionally, since Plaintiff also failed to make payment of the fee amount charged for his earlier December 11, 2008 FOIA request (Contract 6868), any claim for material or information sought under that FOIA request should also be dismissed for failure to exhaust administrative remedies.  <u>Jeans v. U.S. Department of Justice</u>, 357 F.Supp.2d 119, 122-123 (D.D.C. 2004)[Court lacks subject matter jurisdiction over action where there is no evidence in the record that Plaintiff properly paid fees assessed by the agency to process a request].

With respect to Plaintiff's three (3) remaining FOIA requests, Defendant argues that



15

Plaintiff's requested relief in this case exceeds the scope of these remaining FOIA requests, and that Plaintiff has therefore not exhausted his administrative remedies with respect to any items in his requests for relief that were not requested as part of one of those FOIA requests. Defendant further argues that, to the extent Plaintiff may have requested additional information during any appeals filed concerning the responses to his original FOIA requests, the inclusion of such additional requests in his internal agency appeals and in his complaint is not proper. Cf. Kowalczyk v. U.S. Dep't of Justice, 73 F.3d 386, 388-389 (D.C.Cir. 1996)[Agency is not obligated to conduct a "new search" based on new suggested leads in Plaintiff's appeal letter]; Wiesner v. Federal Bureau of Investigation, 668 F.Supp.2d 164, 170-171 (D.D.C. 2009); Butler v. Dep't. of Treasury, No. 95-1931, 1997 WL 138720 at * 1 (D.D.C. Jan. 14, 1997).

In his cross motion for summary judgment, at pages 17 through 18, Plaintiff states that he "submitted requests for the whole contract with all its attachments and parts", citing to the Defendant's "Att. 5 T. 1" as an example of an FOIA request. As shown on the Docket of this case, Defendant's Attachment 5, Tab 1 is a copy of an FOIA request from the Plaintiff dated March 30, 2009, wherein Plaintiff requests a copy of the "complete contract" of Contract 6881, including modifications, RFPs, SSP Sections L and M, PECPs, subcontractor lists, and other information. This FOIA request is, of course, the FOIA request on which the evidence before the Court shows Plaintiff failed to pay the processing fee. See Rosenbaum Declaration, at Attachment 5, Tabs 2-4. In any event, the undersigned agrees with the Defendant that to the extent any material or information sought by the Plaintiff through this lawsuit was not included in his original FOIA requests, Plaintiff's requested relief is subject to dismissal for failure of the Plaintiff to exhaust his administrative remedies with respect to such additional information. Center to Prevent Handgun Violence, 981 F.Supp. at 23 ["Strict enforcement of the exhaustion doctrine is favored in FOIA cases"]; Stebbins v. Nationwide



Mutual Ins., 757 F.2d 364, 366 (D.C. Cir. 1985)["Exhaustion of [administrative] remedies is required is under the Freedom of Information Act before a party can seek judicial review"]. Therefore, only the material and information as set forth in Plaintiff's original FOIA requests are properly before this Court for consideration.

## II.

### (Remaining Claims)

Plaintiff's three remaining claims relate to his FOIA requests of November 24, 2008 (Contract 4556), January 25, 2009 (Contract 6879), and January 28, 2009 (Contract 2825). With respect to these FOIA requests, the Defendant argues that it properly applied FOIA Exemptions 2, 6, and 4 to these requests, with all reasonably segregable material having then been released to the Plaintiff.

**Exemption 2**. Exemption 2 exempts from disclosure records that are "related solely to the internal personnel rules and practices of an agency". 5 U.S.C. § 552(b)(2). The evidence reflects that Exemption 2 was cited in the redacting of the location of security alarm systems components at pages 8-23 of Task Order No. 0001 under Contract 2825. See Rosenbaum Affidavit, at Attachment 4, Tab 4. These redactions also included the location of the Marine Corps Air Station in Japan where these security systems were being installed.

The Defendant argues that this information could be used to render the security system inoperable. In his cross motion for summary judgment, Plaintiff does not really address the Defendant's redactions of the operating components of the security system at issue, focusing instead on the redacting of the location of the air base where the system was to be installed. See Plaintiff's Brief, at pp. 10-12. However, while Plaintiff argues that the location of Marine Corps Air Stations in Japan is a matter of public record, the Defendant contends that this was a valid use of Exemption



17

2 because the Defendant did not want to give notice of the location of the particular Marine Corps Air Station where the security system was being installed because that would identify the operating system for that base. The undersigned can discern no violation of the FOIA in the redaction of this information. Cf. Milner v. U.S. Dep't. of the Navy, No. 06-1301, 2007 WL 3228049 at * * 7-8 (W.D.Wash. Oct. 30, 2007)[Government interest "particularly weighty" in non-disclosure of information relating to security concerns]; In Defense of Animals v. National Institutes of Health & Human Servs., 543 F.Supp.2d 70, 81-82 (D.D.C. Apr. 14, 2008)["Information that would allow an individual to circumvent the law is unquestionably one area that may fall under protection of Exemption 2."].

**Exemption 6**. Exemption 6 protects personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). With respect to Exemption 6, the evidence submitted reflects that the Defendant released names of contracting officers or administrative contracting officers whose names and contact information had been released as points of contact for solicitation actions, but that names of Navy Department employees whose identities would not already have been known to outside parties from their dealings with solicitation related matters, via postings on a public web page or in the normal course of issuing and handling of pre-contract actions, were redacted. See Rosenbaum Affidavit, ¶ 9 and Vaughn Index attached to that Affidavit. This redaction was in compliance with DOD policy on responding to FOIA requests. See Rosenbaum Affidavit, at Attachment 6.

The Defendant argues that there has been no declaration of any public interest in this information, or any attempt to show that the redacted names are required to allow the public to understand the agency's workings through the documents provided. Cf. Schoenman v. Federal Bureau of Investigation, 575 F.Supp.2d 136, 160 (D.D.C. 2008); Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C.



Cir. 1999); National Association of Retired Federal Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); Reed v. NLRB, 927 F.2d 1249 (D.C. Cir. 1991). In response to Defendant's arguments, Plaintiff concedes that he is not challenging the redaction of names and identifying information relating to low level government employees, stating that he is seeking only the names of individuals in "high ranking or policy making positions . . . who decided the labor rates for a $423m contract . . . ." Defendant is not, however, claiming any such exemption. Rather, Defendant affirmatively states that Plaintiff was given the names and contact information for all of the awarding contracting officers for all of Plaintiff's FOIA requests that were processed, with only information on lower level employees not already identified being redacted. Rosenbaum Affidavit, ¶¶ 8-9, and Attachment 6. Defendant's Memorandum in Opposition, p. 7. Plaintiff has provided no evidence to the Court to show that the Defendant has failed to comply with the FOIA with respect to this issue. Judicial Watch, Inc. v. Clinton, 880 F.Supp. 1, 10 (D.D.C. 1995)["Affidavits submitted by an agency are accorded substantial weight . . . . [m]ere unconfirmed allegations of bad faith will not undermine the agency's credibility."]; cf. Safecard Servs., Inc. v. Sec. and Exchange Comm'n, 926 F.2d 1197, 1200 (D.C.Cir. 1991)[agency affidavits accorded presumption of good faith; Plaintiff cannot rebut affidavits by "purely speculative claims about the existence and discoverability of documents."].

  **Exemption 4**. The bulk of the dispute between the parties appears to relate to the Defendant's use of Exemption 4 of the FOIA. Exemption 4 protects "trade secrets and commercial or financial data obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Defendant argues that the information redacted from the material provided in response to Plaintiff's FOIA requests pursuant to this Exemption was privileged or confidential commercial or financial data obtained from the contractors. See Gavin v. United States Postal Service, 356 F.3d 588, 591, n. 5 (4th Cir. 2004)[Holding that FOIA Exemption 4 covers 1) trade secrets and commercial or financial



19

information, 2) obtained from a third person outside the government, 3) that it is privileged or confidential], citing <u>Acumenics Research & Tech. v. United States Department of Justice</u>, 843 F.2 800, 807 (4th Cir. 1988); <u>see</u> <u>also</u> <u>American Airlines, Inc. v. National Mediation Board</u>, 588 F.2d 863, 870 (2nd Cir. 1978)[Broad view applied to criteria of what constitutes commercial or financial data].

The evidence reflects that the Defendant redacted contractor financial data, employee names, and subcontractor firm names from Plaintiff's three remaining FOIA requests after obtaining input from the contractors regarding potential harm if such information was released. <u>Rosenbaum Affidavit</u>, Attachment 1, Tab 5; Attachment 3, Tab 2; Attachment 4, Tab 2. The documents reflect that, with respect to Contract 4556, the contractor had no objection to release of the information in full. With respect to Contracts 6879 and 2825, the contractor objected to release of the estimated cost and fixed fee, the identity of the company's key personnel, and the contracting point of contact. The contractor advised that this data would not customarily be released in a competitive market without restriction because the pricing information would divulge the profit or fee rate the company would accept in such contracts, giving a competitor an unfair advantage in both commercial and government markets, while the personnel data would allow a competitor to poach valuable employees from the company, again gaining an unfair competitive advantage. The contractor further stated that it and similar companies in the industry would be increasing reluctant to bid on government work if such data were released.

These are valid reasons for not releasing this information under <u>National Parks & Conservation Ass'n. v. Morton</u>, 498 F.2d 765, 770 (D.C. Cir. 1974), which held that information is confidential if disclosure would be likely either 1) to impair the government's ability to obtain necessary information in the future; or 2) cause substantial harm to the competitive position of the



person from whom the information was obtained,[5] as long as the Defendant meets it burden of establishing these criteria. To meet this standard, the party seeking to avoid disclosure needs to show that actual competition exists, and that there is a likelihood of "substantial competitive harm". <u>Gavin</u>, 356 F.3d at 591, n. 5; <u>see</u> <u>also</u> <u>Boeing v. Department of the Air Force</u>, 616 F.Supp.2d 40, 46 (D.D.C. 2009); <u>Morton</u>, 498 F.2d at 770. The evidence submitted to the Court is sufficient to meet this standard.

First, with respect to the redaction of not yet exercised options for "out year" services in Contract 2825, release of this information would allow competitors to estimate and undercut bids of the contractor. <u>See</u> <u>McDonald Douglas v. Department of the Air Force</u>, 375 F.3d 1182, 1189 (D.C.Cir. 2004)[Finding that release of option year pricing would significantly increase the probability that competitors would underbid the contractor in the event of a rebidding of that portion of the contract]; <u>Boeing v. Department of the Air Force</u>, 616 F.Supp.2d at 49 [Finding that providing cost information for work not yet performed under a contract would provide competitors with exact future rates, thereby allowing competitors to underbid the contractor]. With respect to the financial/pricing data in the contracts or orders, the total price for each contract or order was released, with only the

---

[5]There are actually two tests employed when considering whether material should be redacted under Exemption 4, the <u>Morton</u> standard as set forth hereinabove, and the standard set forth in <u>Critical Mass Energy Project v. Nuclear Regulatory Commission</u>, 975 F.2d 871, 879 (D.C. Cir. 1992), which held that material could be kept confidential if it is the kind of information "that would customarily not be released to the public by the person from whom it was obtained." The <u>Critical Mass</u> standard is used in cases where the financial or commercial information was disclosed to the government voluntarily, while the <u>Morton</u> standard is used where the information was required to be disclosed. <u>See</u> <u>McDonald Douglas Corp. v. National Aeronautics and Space Administration</u>, 180 F.3d 303, 304-305 (D.C. Cir. 1999). Although the release of the information here was voluntary, it is not clear whether the voluntary <u>Critical Mass</u> standard is applicable in the Fourth Circuit. <u>See</u> <u>Gavin</u>, 356 F.3d at 597 [Declining to decide which test governs within the Fourth Circuit for determining whether information is confidential]. Therefore, in considering the pending motions, the undersigned has used the more rigorous <u>Morton</u> test.



fixed fee being redacted. Defendant argues, and the undersigned agrees, that releasing the contractor's proposed and accepted fixed fee amount would allow a competitor to discern a contractor's fee strategy, thereby making it easy to underbid the contractor on future contracts. See McDonald Douglas Corp. v. U. S. Department of the Air Force, 375 F.3d at 1192-1193 [Distinguishing disclosure requirements of all constituent pricing information from the bid price itself under Exemption 4]. Similarly, the release of the names of the contractors' employees and subcontractors would allow other contractors to attempt to hire those employees away from the contractor as well as allow competitors to benefit from the contractors' work and associated costs in finding and reaching agreement with subcontractors. Cf. SMS Data Products Groups, Inc. v. Department of the Air Force, No. 88-481, 1989 WL 201031, * 4 (D.D.C. 1989).

Plaintiff offers several arguments for why the Defendant's redactions should not be sustained. Plaintiff argues that Exemption 4 was wrongly invoked because labor rates in subcontracting plans do not meet the definition of "trade secrets". However, previously cited caselaw supports the redaction of such information under Exemption 4. McDonald Douglas v. Department of the Air Force, 375 F.3d at 1192-1193; Boeing v. Department of the Air Force, 616 F.2d at 49; see Gulf & Western Industries, Inc. v. United States, 615 F.2d 527, 530 (D.C. Cir. 1979)[Substantial competitive harm is likely where disclosure allows competitors to estimate and undercut bids]. Plaintiff also argues that Breitkreutz's Affidavit contains "false statements", in particular where Breitkreutz attests that FAR Sections L and M are not included in the awarded contract. However, the Defendant correctly notes that Part 15 of the FAR applies to negotiated contracts, and that pursuant to 48 C.F.R. § 15.204, Sections L and M are specifically *not* part of the contract, and in fact are actually required to be left out of the actual contract. See also 41 U.S.C. § 253(b), 10 U.S.C. § 2305(b).

22



Finally, while Plaintiff and the Defendant also argue over exactly what Plaintiff is seeking when he requests "PECPs" in his complaint,[6] the only FOIA request in which Plaintiff used the PECP acronym as part of his request was Plaintiff's request of March 30, 2009, which (as previously discussed) is not properly before this Court for failure of the Plaintiff to exhaust his administrative remedies.

## Conclusion

Both parties have filed motions for summary judgment in this case, and the undersigned agrees that this matter can be resolved on these cross motions for summary judgment. See Gavin, 356 F.3d at 591 ["FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified"]. After careful review of the arguments and evidence presented, the undersigned finds and concludes that no genuine issue of fact exists as to whether or not summary judgment should be granted in favor of the Defendant for failure of the Plaintiff to exhaust his administrative remedies with respect to his FOIA requests of December 11, 2008 (Contract 6868) and March 30, 2009 (Contract 6881), nor for the reasons set forth hereinabove is there a genuine issue of fact as to whether the Defendant improperly withheld material under the FOIA with respect to the Plaintiff's remaining three (3) FOIA requests (of November 24, 2008 (Contract 4556), of January 25, 2009 (Contract 6879), and of January 28, 2009 (Contact 2825)). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)[Defining a genuine issue of material fact as one that would change the outcome of the litigation]; Hayden v. NSA, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979)[Agency satisfied the summary judgment requirements in an FOIA case when it provided affidavits or other evidence showing that the documents in question were either produced or were exempt from disclosure];

---

[6]The Defendant interpreted PECPs to mean "Proposed Engineering Change Proposals", while Plaintiff argues he was referring to a "Professional Employee Compensation Plan".



TransUnion LLC v. FTC, 141 F.Supp.2d 62, 67 (D.D.C. 2001)[Summary judgment appropriate in FOIA cases where "the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith'"], quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

Therefore, it is recommended that the Defendant's motion for summary judgment be **granted**, that the Plaintiff's cross motion for summary judgment be **denied**, and that this case be dismissed.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 17, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

